# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# AMARILLO DIVISION

| | | |
|---|---|---|
| **ROMAN CATHOLIC DIOCESE OF AMARILLO,** | § § § § § | |
| Plaintiff, | § | |
| v. | § § | CASE NO. _____ |
| **CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,** | § § § § | |
| Defendant. | § | JURY DEMANDED |

## ORIGINAL COMPLAINT

TO THE HONORABLE MARY LOU ROBINSON, UNITED STATES DISTRICT JUDGE:

Plaintiff, the Roman Catholic Diocese of Amarillo ("Diocese"), files this Complaint complaining of Certain Underwriters at Lloyd's, London ("Lloyd's"), and would show:

## PARTIES

1. **Parties.**  The parties are as follows:

a.  Plaintiff, the Roman Catholic Diocese of Amarillo, is a church organization in the State of Texas, lying within Potter and Randall Counties, Texas, with its administrative office located in the City of Amarillo, Potter County, Texas.

b.  Defendant, Certain Underwriters at Lloyd's, London is a New York Corporation licensed to write Surplus Lines property and casualty insurance in the State of Texas by the Texas Department of Insurance. It may be served with citation by delivery to its registered agent as follows: Edward T. Smith, Mendes & Mount, LLP, 750 Seventh Avenue, New York, NY 10019-6829.

## JURISDICTION AND VENUE

2. **Jurisdiction.** This is a civil action over which this Court has jurisdiction under 27 U.S.C. § 1332 as Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000.

3. **Venue.** Pursuant to 27 U.S.C. § 1391(b)(2) venue is proper in the Northern District of Texas, Amarillo Division, as a substantial part of the events or omissions giving rise to the claim occurred in, the payment under the contract of insurance which is the basis of this lawsuit is performable in and a substantial part of property that is the subject of the action is situated in Potter County, Texas.

## FACTUAL BACKGROUND

4. The Diocese contracted with Lloyd's to insure the buildings owned by the Diocese in Potter, Randall, and Deaf Smith Counties, among others, against direct physical damage or loss. The policy was in effect from July 1, 2012 to July 1, 2013. The catastrophic events which provide the basis of the underlying insurance claim occurred within the policy period. At all times relevant, the Diocese paid the premiums, as required under the contract of insurance, performed all obligations under the contract and performed all conditions precedent to support the claims the Diocese asserts in this Complaint.

5. On May 28, 2013, a hail storm hit the Amarillo, Hereford, and surrounding areas causing direct physical loss and damage to buildings insured under the Covered Property terms of the policy. Plaintiff alerted the carrier of the loss and otherwise complied with the policy conditions and terms.

6. On May 29, 2013, the Diocese notified Lloyd's of the hail storm and began submitting claims on the same date. Between May 29, 2013 and June 17, 2013, the Diocese

notified Lloyd's of claims on the following properties: Bishop De Falco Retreat Center, Capuchin Monastery, Diocesan Pastoral Center and Museum, St. Martin De Porres Mission, Our Lady of Guadalupe, St. Hyacinth, St Laurence, St. Mary's Cathedral, St. Thomas the Apostle, Blessed Sacrament, and St. Anthony's, among others. These claims identified loss locations in Amarillo, Friona, and Hereford and put Lloyd's on notice that the scope and extent of the hail storm warranted investigation with regard to all properties in Amarillo, Friona, and Hereford that were named under the policy.

7. The Diocese supplemented its claims with additional information for losses occurring at San Jose Church in Hereford on April 10, 2014, St. Francis in Amarillo on October 24, 2014, and St. Joseph's on May 7, 2015. Additionally, the Diocese provided to Lloyd's Xactimate reports regarding all loss locations from Lonestar KER Corp. showing the scope and value of the losses.

8. Lloyd's hired Vericlaim to act as its adjuster with regard to the loss. Neither Lloyd's, nor Vericlaim performed a prompt, diligent, or complete investigation of the scope or extent of the damage caused by the hail storm. Instead, Vericlaim, with authority from Lloyd's, failed to inspect properties that were known by Lloyd's and Vericlaim to be in the path of the hailstorm and intentionally undervalued claims for repair and replacement of properties that it did inspect. Specifically, Vericlaim failed and refused to perform inspections on properties that were known, or should have been known, by both Vericlaim and Lloyd's to be in the path of the hail storm. Lloyd's and Vericlaim acted negligently with regard to their investigation of the claim or intentionally with regard to their misrepresentations as to the scope of the loss and valuation.

9. Additionally, Lloyd's made misrepresentations to the Diocese about the inclusion of general contractor fees in Xactimate reports created and published by Vericlaim. These misrepresentations occurred in a May 9, 2014 email from Lloyd's agent, Bill Waldorf, to Diocese Chief Financial Officer, Phil Whitson. Specifically, Lloyd's misrepresented that it was not required to pay overhead and profit for the general contractor, despite its obligation under the contract to do so. In the same email, Lloyd's misrepresented that the unit pricing in the Xactimate valuation already included general overhead expenses, commonly referred to as overhead and profit, for the general contractor. Xactware, the company that manufactures and maintains the Xactimate software, specifically stated in a February 2, 2007 notice that "General Overhead expenses are not included in Xactware's unit pricing, but are typically added to the estimate as a percentage of the total bid along with the appropriate profit margin." This misrepresentation by Lloyd's was intended to provide Lloyd's with a windfall by allowing them to avoid paying the required amounts under the contract, and by directly damaging the Diocese.

10. The Diocese has, at its own expense, retained trained and competent insurance industry professionals to create Xactimate estimates to value the damage to the listed properties and to investigate factual allegations regarding the inclusion of repair costs in the Xactimate valuations performed by Vericlaim. The physical damage to Diocese properties as a result of this storm is greater than $18,000,000.00. To date, Lloyd's has paid less than 15% of that amount and has refused to pay additional amounts.

11. Lloyd's has consistently refused to make meaningful attempts to settle the Diocese's claims and has actively attempted to mischaracterize and wrongfully manipulate evidence to misrepresent the value of the claim, in violation of the Texas Insurance Code by:

a. misrepresenting coverage issues underlying the policy, including the payment of general contractors fees;

b. misrepresentation of damage items as being included in Xactimate estimates when they were not, including Overhead and Profit;

c. refusing to send adjusters with authority to adjust the loss to meetings and inspections;

d. attempting to settle the claim without performing a full and adequate investigation of the loss;

e. refusing to acknowledge reports showing hail damage;

f. misrepresenting the value and scope of hail damage losses at covered properties both verbally and in writing;

g. colluding with Defendant's experts to misstate the value and devalue the damages;

h. unreasonably delaying settlement offers on location valuations despite the insurer's liability becoming reasonably clear;

i. unreasonably delaying settlement offers on locations where Plaintiff has provided expert documentation of the value of the loss;

j. refusing to pay the claim without conducting a reasonable investigation with respect to the claim;

k. misrepresenting that an investigation had been completed when it had not been completed;

l. making untrue statements of material fact about the scope and value of the damages;

m. failing within a reasonable time to affirm or deny coverage of a claim;

n. failing to adopt and implement reasonable standards for the prompt investigation of claims under the policy;

o. compelling the Diocese to institute a lawsuit to recover an amount due under the policy by offering substantially less than the amount ultimately recovered; and

p. failing to timely pay claims.

12. The Diocese has provided to Lloyd's all information necessary to pay the claim. All prerequisites for payment have been met.

13. Lloyd's continues to refuse to pay the amounts owed under the policy in breach of the insurance contract and its common law and statutory obligations. .

## CAUSES OF ACTION

14. **Breach of Contract.** Plaintiff incorporates the allegations of paragraphs 4-13 the same as if fully set forth herein. Plaintiff and Defendant entered into an insurance contract. Plaintiff complied with all provisions of the insurance policy. Defendant breached a material provision of the contract by refusing to pay amounts owed under the insurance contract after a loss. Plaintiff was damaged by Defendant's breach.

15. **Violations of the Texas Insurance Code.** Plaintiff incorporates the allegations of paragraphs 4-13 the same as if fully set forth herein. Lloyd's failed to, with good faith, effectuate a prompt, fair, and equitable settlement of the Diocese's claims when liability was reasonably clear in violation of Texas Insurance Code Section 541.060(a)(2)(A). Specifically, Lloyd's refused to pay for repair or replacement of the roofing structures, exteriors, and HVAC units after being presented with information of both the scope and the value of the loss sustained by the Diocese. The Diocese is entitled to its actual damages plus an 18% penalty.

16. Lloyd's further refused to pay the Diocese's claims without conducting a reasonable investigation with respect to those claims in violation of Texas Insurance Code Section 541.060(a)(7). Specifically, Lloyd's represented or implicitly represented that their claims representatives, including Vericlaim, would be objective when they were not. Lloyd's also failed to disclose its business relationships with those individuals and firms who were sent to evaluate the Diocese's claims and this failure to disclose was intended to induce the Diocese into accepting undervalued or denied claims.

17. In addition, Lloyd's refused to timely investigate the claim, including the failure to adequately investigate the scope and extent of the loss and the failure to adequately investigate the scope and damage estimates provided by the Diocese's representatives, Lonestar KER Corp.

18. Lloyd's also refused to perform an adequate investigation, instead, intentionally or negligently exempting entire properties and locations from its investigation, despite knowledge of the scope of the hail storm and its path through the Amarillo and Hereford areas.

19. Additionally, Lloyd's failed to promptly provide the Diocese with a reasonable explanation of the basis in the policy, in relation to the facts of the claim, for Lloyd's denial of coverage to certain damage and failed to promptly provide the Diocese with a reasonable explanation of the basis in the policy, in relation to the facts of the claim for Lloyd's refusal to accept the Diocese's offer of compromise settlement in violation of Texas Insurance Code section 541.060(a)(3).

20. Further, Lloyd's has committed unfair acts and practices in violation of Texas Insurance Code section 541.061 by:

    a. making untrue statements of material fact concerning the policy, the scope of damage, and coverage for the loss under the policy;

    b. failing to disclose material facts necessary to make other statements misleading; and

    c. making statements in a manner that led the Diocese to false conclusions of material fact.

21. Specifically, Lloyd's, directly and through its agents, misrepresented the scope of the loss, the cost of repairs, the coverage for the loss under the policy, the objectivity and competence of Lloyd's claims representatives, and the business relationship between Lloyd's and Vericlaim. These misrepresentations were made by Lloyd's general adjuster, its local agent, Bill Waldorf, and Vericlaim during the claims process.

22. Lloyd's acted knowingly and intentionally. The Diocese was damaged by Lloyd's acts and omissions. The Diocese is entitled to its actual damages and additional or exemplary damages as allowed by law, including treble damages and attorney's fees under Texas Insurance Code section 541.152.

23. **Negligence.** Plaintiff incorporates the allegations of paragraphs 4-13 the same as if fully set forth herein. Lloyd's owed a duty to the Diocese to perform a reasonable and thorough investigation. Lloyd's was negligent and grossly negligent in conducting its inspection and investigation. Initially, it did not consider locations that suffered damages, but Lloyd's nevertheless tried to settle the Diocese's claims. Further, Lloyd's and its agents failed to conduct proper testing to determine the scope and value of losses. These breaches of Lloyd's duty caused damage to the Diocese.

## ATTORNEYS' FEES

24. **Attorneys' Fees.** As a result of Defendant's failure to pay the amounts due and owing under the policy, Plaintiff retained the undersigned counsel. Plaintiff agreed to pay the undersigned counsel a reasonable fee. Plaintiff is entitled to recover attorney's fees under Texas

Civil Practice & Remedies Code section 37.009 and Texas Insurance Code sections 541.152 and 542.060.

## JURY DEMAND

25. **Jury Demand.** Plaintiff requests a jury.

## PRAYER

26. Plaintiff prays that Defendants be cited to appear and answer herein and upon hearing that Plaintiff recover judgment against the Defendants for the following:

   a. actual damages;

   b. attorneys' fees for services rendered and that are allowed by law;

   c. post-judgment interest and costs;

   c. treble damages, and exemplary damages as allowed by law;

   d. 18% penalties and interest as allowed by law; and

   e. all other relief Plaintiff may show itself entitled to in law or in equity.

Respectfully submitted,

Kelly Utsinger
State Bar No. 20416500
kelly.utsinger@uwlaw.com
Benjamin D. Doyle
State Bar No. 24080865
ben.doyle@uwlaw.com
UNDERWOOD LAW FIRM, P.C.
500 South Taylor, Suite 1200
P.O. Box 9158
Amarillo, TX 79105
Telephone: (806) 376-5613
Fax: (806) 349-9476

/s/ Benjamin D. Doyle

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
             THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❒ 1  U.S. Government Plaintiff
- ❒ 2  U.S. Government Defendant
- ❒ 3  Federal Question *(U.S. Government Not a Party)*
- ❒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❒ 1 | ❒ 1 | Incorporated *or* Principal Place of Business In This State | ❒ 4 | ❒ 4 |
| Citizen of Another State | ❒ 2 | ❒ 2 | Incorporated *and* Principal Place of Business In Another State | ❒ 5 | ❒ 5 |
| Citizen or Subject of a Foreign Country | ❒ 3 | ❒ 3 | Foreign Nation | ❒ 6 | ❒ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❒ 110 Insurance<br>❒ 120 Marine<br>❒ 130 Miller Act<br>❒ 140 Negotiable Instrument<br>❒ 150 Recovery of Overpayment & Enforcement of Judgment<br>❒ 151 Medicare Act<br>❒ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>❒ 153 Recovery of Overpayment of Veteran's Benefits<br>❒ 160 Stockholders' Suits<br>❒ 190 Other Contract<br>❒ 195 Contract Product Liability<br>❒ 196 Franchise | **PERSONAL INJURY**<br>❒ 310 Airplane<br>❒ 315 Airplane Product Liability<br>❒ 320 Assault, Libel & Slander<br>❒ 330 Federal Employers' Liability<br>❒ 340 Marine<br>❒ 345 Marine Product Liability<br>❒ 350 Motor Vehicle<br>❒ 355 Motor Vehicle Product Liability<br>❒ 360 Other Personal Injury<br>❒ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>❒ 365 Personal Injury - Product Liability<br>❒ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>❒ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>❒ 370 Other Fraud<br>❒ 371 Truth in Lending<br>❒ 380 Other Personal Property Damage<br>❒ 385 Property Damage Product Liability | ❒ 625 Drug Related Seizure of Property 21 USC 881<br>❒ 690 Other<br><br>**LABOR**<br>❒ 710 Fair Labor Standards Act<br>❒ 720 Labor/Management Relations<br>❒ 740 Railway Labor Act<br>❒ 751 Family and Medical Leave Act<br>❒ 790 Other Labor Litigation<br>❒ 791 Employee Retirement Income Security Act | ❒ 422 Appeal 28 USC 158<br>❒ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>❒ 820 Copyrights<br>❒ 830 Patent<br>❒ 840 Trademark<br><br>**SOCIAL SECURITY**<br>❒ 861 HIA (1395ff)<br>❒ 862 Black Lung (923)<br>❒ 863 DIWC/DIWW (405(g))<br>❒ 864 SSID Title XVI<br>❒ 865 RSI (405(g))<br><br>**FEDERAL TAX SUITS**<br>❒ 870 Taxes (U.S. Plaintiff or Defendant)<br>❒ 871 IRS—Third Party 26 USC 7609 | ❒ 375 False Claims Act<br>❒ 400 State Reapportionment<br>❒ 410 Antitrust<br>❒ 430 Banks and Banking<br>❒ 450 Commerce<br>❒ 460 Deportation<br>❒ 470 Racketeer Influenced and Corrupt Organizations<br>❒ 480 Consumer Credit<br>❒ 490 Cable/Sat TV<br>❒ 850 Securities/Commodities/ Exchange<br>❒ 890 Other Statutory Actions<br>❒ 891 Agricultural Acts<br>❒ 893 Environmental Matters<br>❒ 895 Freedom of Information Act<br>❒ 896 Arbitration<br>❒ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>❒ 950 Constitutionality of State Statutes |
| **REAL PROPERTY**<br>❒ 210 Land Condemnation<br>❒ 220 Foreclosure<br>❒ 230 Rent Lease & Ejectment<br>❒ 240 Torts to Land<br>❒ 245 Tort Product Liability<br>❒ 290 All Other Real Property | **CIVIL RIGHTS**<br>❒ 440 Other Civil Rights<br>❒ 441 Voting<br>❒ 442 Employment<br>❒ 443 Housing/ Accommodations<br>❒ 445 Amer. w/Disabilities - Employment<br>❒ 446 Amer. w/Disabilities - Other<br>❒ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>❒ 463 Alien Detainee<br>❒ 510 Motions to Vacate Sentence<br>❒ 530 General<br>❒ 535 Death Penalty<br>**Other:**<br>❒ 540 Mandamus & Other<br>❒ 550 Civil Rights<br>❒ 555 Prison Condition<br>❒ 560 Civil Detainee - Conditions of Confinement | **IMMIGRATION**<br>❒ 462 Naturalization Application<br>❒ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ❒ 1  Original Proceeding
- ❒ 2  Removed from State Court
- ❒ 3  Remanded from Appellate Court
- ❒ 4  Reinstated or Reopened
- ❒ 5  Transferred from Another District *(specify)*
- ❒ 6  Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

❒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:

**JURY DEMAND:**   ❒ Yes   ❒ No

## VIII. RELATED PENDING OR CLOSED CASE(S) IF ANY
*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE _____    SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____